## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>TERRA MANAGEMENT GROUP, LLC<br>EIN:  84-1501624,<br><br>Debtor. | Case No.  21-15245 (KHT)<br><br>Chapter 11 |
| In re:<br><br>LITTLETON MAIN STREET LLC<br>EIN:  84-1463375,<br><br>Debtor. | Case No.  21-15246 (KHT)<br><br>Chapter 11<br><br>(Jointly Administered in<br>Case No. 21-15245-KHT) |

## DISCLOSURE STATEMENT TO ACCOMPANY
## DEBTORS' JOINT PLAN OF REORGANIZATION

Debtors Terra Management Group, LLC ("**Terra**") and Littleton Main Street LLC ("**Main Street**" and together with Terra, the "**Debtors**") in the above-referenced chapter 11 case (the "**Case**") hereby submit this Disclosure Statement (the "**Disclosure Statement**") pursuant to 11 U.S.C. § 1125 to accompany their Joint Plan of Reorganization (Docket No. 142) (the "**Plan**") filed on May 13, 2022. Capitalized terms contained in this Disclosure Statement that are defined in the Plan have the same meaning as set forth in the Plan. All exhibits to the Plan and Disclosure Statement are incorporated into and are a part of the Plan and Disclosure Statement as if set forth in full herein.

This Disclosure Statement is being provided to all creditors of the Debtors. This Disclosure Statement is subject to final approval pursuant to section 1125 of the Bankruptcy Code by the United States Bankruptcy Court for the District of Colorado as containing adequate information to enable creditors and Interest holders to determine whether to accept the Debtors' Plan.

**THE VOTING DEADLINE IS [_____], 2022**

**(UNLESS THE DEBTORS EXTEND THE VOTING DEADLINE).**

**TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE DEBTORS' COUNSEL, BROWNSTEIN HYATT FARBER SCHRECK, LLP AT 410 17TH STREET, SUITE 2200, DENVER, CO 80202, MUST ACTUALLY RECEIVE YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN AND ANY EXHIBITS ATTACHED HERETO IS HIGHLY SPECULATIVE, AND SUCH DOCUMENTS SHOULD NOT BE RELIED UPON IN MAKING INVESTMENT DECISIONS WITH RESPECT TO THE DEBTORS.**

**PRESERVATION OF AVOIDANCE ACTIONS UNDER THE PLAN:**

IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION (EXCEPT RELEASED CLAIMS) AND THAT THE PLAN AUTHORIZES THE DEBTORS  TO PROSECUTE THE SAME.

**IMPORTANT INFORMATION FOR YOU TO READ:**

**THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THEIR PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE TO HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.**

**THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.**

**THIS DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE READER IS**

CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.   THE LIQUIDATION ANALYSIS, DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED.   THEREFORE, ANY ANALYSES, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTORS' POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER. RATHER, HOLDERS OF CLAIMS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE DEBTORS MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.  ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE,

**THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT. THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.**

**THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.**

**THE DEBTORS ARE GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO.  HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED.  THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

**HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VII HEREIN.**

## I. INTRODUCTION

### A. Overview

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows Debtors to retain their assets during the administration of the Chapter 11 case as debtors-in-possession. Following

confirmation of the Plan, Chapter 11 allows the Debtors to retain their assets as reorganized debtors or as otherwise provided in the Plan. If the Plan is approved by the Court, the Plan is the permanent restructuring of the Debtors' financial obligations. The Plan also provides a means through which the Debtors will restructure or repay their obligations. The Plan represents a proposed compromise from all stakeholders that will provide the Debtors with the opportunity to restructure their secured debt with minor impairments and pay distributions to unsecured creditors—at such creditor's election— either (i) a set, lump sum payment in cash on the effective date of the Plan or (ii) quarterly payments for a five year period following the effective date of the Plan from a portion of the Debtors' Net Cash Flow.

The Debtors believe that the Plan is the only viable means for preserving the Debtors' business operations by reorganizing the Debtors' capital structure and maximizing value for creditors and parties in interest. The alternative to confirmation of a plan would potentially require a liquidation of Debtors' business and a sale of Main Street's property, which after payment to Main Street's mortgage lender and costs of sale is not likely to result in any meaningful distributions to creditors.

**B. Sources of Information for Disclosure Statement; Financial Reporting.**

Substantially all of the factual information utilized in this Disclosure Statement was obtained from information provided by the Debtors' management as well as its books, records, Statement of Financial Affairs, Schedules, and the claims register.

## II. <u>GENERAL INFORMATION ABOUT THE DEBTORS</u>

**A. Debtors' History and Business Interests**

Both Terra and Main Street provide affordable housing, utilizing financing as part of the Low-Income Housing Tax Credit program ("**LIHTC**"), to qualifying low income individuals and families.

### 1. Main Street

Main Street owns real estate located at 5710 South Prince Street in Littleton, Colorado 80120 (the "**Property**"). At the Property, Main Street owns and leases fifty (50) apartment units to low-income individuals and families. Main Street has no other material assets or business. Indeed, Main Street does not own the entire building in which the apartment units are located. The building was condominiumized prior to the start of construction. The ground floor of the building, used for retail, is owned by a separate entity.

The Property provides affordable housing at reduced rents pursuant to the LIHTC program. The tax credits under this program helped finance construction of the Property. In connection therewith, the Property is encumbered by a Low-Income Housing Tax Credit Land Use Restriction Agreement, dated December 9, 1999 (the "**LURA**"), which was recorded in real estate records on December 14, 1999. The LURA binds the Property to provisions of affordable housing in accordance with its terms.

Main Street is organized as a limited liability company. The equity interests of Main Street are owned as follows:

- J. Marc Hendricks – Member 31% Interest Holder
- RGAMSA LLC – Member 25%  Interest Holder
- Mendel Family LLC – Member 25% Interest Holder
- MMJT Partners, LTD. – Member 19% Interest Holder

Main Street's only assets are the Property, fixtures and leasing office equipment at the Property. Other than the pending judgment of the Keatens and the Transamerica secured debt described more fully herein, Main Street's debts consist of legal fees, ordinary course trade debt and similar industry standard obligations.

## 2. Terra

Terra is a property management company, organized as a limited liability company. MJT Properties, Inc. is the sole member of Terra. Terra provides property management services pursuant to contracts with twenty-two (22) projects (20 residential properties, 2 of which are currently under construction, and 2 commercial retail properties), serving over 1,600 low income residents and their families. On an annualized basis, Terra generates roughly $775,300.00 in revenue management fees.

Terra has 56 employees that it employs in its management office and to work at different properties. Of those employees, 6 people work solely for Terra, 7 people are shared between Terra and the other properties, including Main Street but Terra and Main Street only pays a portion of their wages; 1 person works solely for Main Street; and 2 people are shared between Main Street and other properties. Terra's senior management is comprised of 5 employees, including J. Marc Hendricks. Terra also employs and pays a part-time project manager, Steve Oliver.

Terra provides property management services to Main Street. The other apartment projects to which Terra provides property management services are each owned by separate entities. Terra does not own equity interests in other entities. Terra is a service business, which owns minimal physical assets: primarily office furniture and one vehicle. Because the management fees are paid regularly and currently, Terra does not own material accounts receivable. Instead, its primary assets are its contractual rights under management agreements for the various properties. Along with these contractual rights, Terra also has contractual obligations to manage each of the properties, requiring Terra to maintain its own staff and office space.

LIHTC credits are detailed and complex and Terra's employees have specialized knowledge in LIHTC compliance, including qualifying residents and managing properties that have LIHTC credits. It is industry standard that selection of the property manager is important to the property owners and their investors – in part to maintain eligibility for LIHTC credits. In accordance with industry standard, Terra's Manager must sign a guaranty that a particular property managed by Terra is and remains eligible for LIHTC credits. As a result, Terra's property management contracts contain anti-assignment provisions, and in any event, tend to run for short terms (a year or less), to be renewed or not, in the sole discretion of the owner of the project, and their lenders and LIHTC investors.

6

### 3.  Events Leading Up to Chapter 11 Filing

The financial performance for Main Street and Terra has historically been modest but stable. Rents and expenses do not vary tremendously from month to month. The Debtors have paid their debts in the ordinary course of business and Main Street is current on its mortgage.

In 2019, the Debtors were sued by two former residents of Main Street, Kathleen Keaten and Delaney Keaten. The Keatens claimed that the apartment below them was the location of a laboratory in which illegal methamphetamines were produced. The Keatens claimed personal injury as a result of exposure, they alleged, to toxic fumes.

The Keatens filed a lawsuit in the District Court, Arapahoe County, Colorado (the "**State Court**"). Following an eight-day bench trial, on August 27, 2021, the State Court issued Findings of Fact and Conclusions of Law. The Court awarded Kathleen Keaten actual and punitive damages of $4,429,372.00; and Delaney Keaten actual and punitive damages of $6,116,636.00 (collectively, the "**Keatens Award**"). This award is against both Terra and Main Street.

The Debtors dispute the Keatens' allegations. During the time of the alleged exposure, the Debtors did not find evidence supporting the claim of a meth lab. Such a lab could not have been concealed, as it would have been merely feet away from other residents and operating retail establishments. Additionally, police had been to the apartment and did not find proof of a meth lab. Despite the fact that other residents lived in adjacent apartments and many others frequently walked by the unit, in the adjacent corridor, no resident besides the Keatens ever stated or acted on a belief that a meth lab was operating in the apartment.

Further, the Debtors respectfully disagree with the State Court's August 27 order in several fundamental respects and believe that aggressive prosecution of their Appeal (discussed below) is critical to preservation of value. Most fundamentally, the Debtors do not believe that evidence was established that the property caused the Keatens harm. In the absence of such evidence, for example, the State Court drew an adverse inference as a matter of law under the Colorado Rules of Civil Procedure based upon alleged spoliation of evidence when the tenant who was allegedly operating the meth lab was evicted. The property and items removed from the apartment, however, were the property of the tenant being evicted and the property manager had to follow all proper eviction laws and procedures. The removal of personal property was conducted under supervision of the Sheriff. This and other issues form the basis for the Debtors' request for appellate review.

Early in this dispute, the Debtors tendered the Keatens' claim to their insurance carrier, which denied coverage, asserting that the circumstances fall within the policy's pollution exclusion. The Debtors objected to the denial of coverage and reserved their rights. Absent insurance, the amount awarded to the Keatens greatly exceeds the ability of Terra and Main Street to pay.

Terra and Main Street commenced their Chapter 11 petitions to maintain stability and operations in the short term, while pursuing their appeal and potential resolution of the Keatens' award. Chapter 11 protection was necessary to preserve Terra's ability to provide service to over 1,600 low-income residents and their families in the various properties it serves and to preserve value for the benefit of all stakeholders, including the Keatens.

## B. Debtors' Liabilities

### 1. Administrative Claims

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in § 503(b) or § 1114(e)(2) of the Code and entitled to priority pursuant to § 507(a)(2) of the Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fees; (c) all bankruptcy fees and charges assessed against the Estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims. The Administrative Claims include the Professional Fees incurred during the case which remain unpaid, including fees and cost for all professionals retained during the case.

Additionally, the Debtors have requested approval for a post-petition loan in an amount of up to $500,000 from J. Marc Hendricks. *See* Section III.C. below. To the extent approved, J. Marc Hendricks will hold administrative expense claim status pursuant to 11 U.S.C. § 364(b) for amounts actually funded under the loan.

Other than the administrative expenses for certain professionals and for the amounts of the post-petition loan actually funded, the Debtors have paid their administrative expenses in the ordinary course of business during the course of the Case and therefore do not believe there will be any other material Administrative Claims asserted against the Debtors' estate.

### 2. Tax Claims and Arapahoe County Treasurer Claim

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8). At this time, the Debtors are not aware of any Tax Claims.

Arapahoe County Treasurer has asserted a secured ad valorem tax claim held by in the amount of $13,311.81 with an annual interest rate of 12% (Main Street, Claim No. 9). The asserted basis for the claim is 2021 real estate ad valorem taxes for the second half of 2021, and the basis for perfection is C.R.S. 39-1-107.

### 3. Secured Claim of Transamerica

On or about December 12, 2014, Transamerica Life Insurance Company, successor by merger to Transamerica Advisors Life Insurance Company ("**Transamerica**") loaned Main Street $2,475,000.00 (the "**Loan**"). As of the Petition Date, the outstanding principal amount of the Loan was $2,054,202.42, plus accrued interest. Aegon USA Realty Advisors, LLC services the Loan. The Loan is not in financial default and Main Street has not missed any monthly payments. The current outstanding principal amount of the Loan is $2,011,429.75.

The Loan is evidenced by, among other things, a Secured Promissory Note (the "**Note**"), dated on or around December 12, 2014, made by Main Street to the order of Transamerica in the original principal amount of $2,475,000.00. The Note is secured by a Deed of Trust, Security Agreement and Fixture Filing on the Property, dated on or around December 12, 2014, and recorded in the records of

the Clerk and Recorder of Arapahoe County on December 12, 2014, at Reception # D4116866 (the "**Deed of Trust**").

The Note is further secured by an Absolute Assignment of Leases and Rents relating to the Property, dated or around December 10, 2014 (the "**Assignment of Rents and Leases**"). On November 29, 2021, Transamerica filed a Notice of Liens and Security Interests Pursuant to 11 U.S.C. § 546(b) (Docket No. 88), asserting perfected liens upon and security interest in and the right to possess the Collateral (as defined in the Notice), including the Property.

### 4.  Terra Secured Claims

#### a)  Ally Secured Claim

On October 29, 2018, Terra entered into a Motor Vehicle Retail Installment Sales Contract – Simple Finance Charge with the dealership Reliable Chevrolet II, LLC, and lienholder Ally Financial ("**Ally**"), regarding a secured loan on a 2019 Chevrolet Silverado 2500 Truck. The current outstanding principal amount of the Loan is $18,394.21.

#### b)  Garnet Secured Claim

Garnet LIHTC Fund XL VIII, LLC ("**Garnet**") filed a UCC financing statement against Terra asserting a lien on the property management fee of HC Brighton Senior II, L.P. Terra disputes Garnet's security interest and Garnet did not file a proof of claim in the Chapter 11 Case. The Debtors do not believe any sums are due and owing in respect of this claim.

### 5.  Disputed Keatens Claims

The Disputed Keatens Claims relate to the Keatens Award. On October 26, 2021, after the Petition Date, the State Court entered its Corrected and Amended Order for Judgment (the "**State Court Judgment**") in violation of Bankruptcy Code Section 362(a). The State Court Judgment is against the Debtors, jointly and severally: (i) in favor of Kathleen Keaten in a total amount of $5,049,855.38, (ii) in favor of Delaney Keaten in a total amount of $7,066,974.92, and (iii) in favor of both Kathleen and Delaney Keaten, jointly and severally, for costs in a total amount of $140,320.48.

On November 22, 2021, Debtors filed a notice of appeal (the "**Notice of Appeal**") of the State Court Judgment with the Colorado Court of Appeals (Case No. 2021CA001856) (the "**Appeal**"), as required by Colo. App. R. 4(a) to preserve the Debtors' right to appeal the State Court Judgment. The Keatens filed the following proofs of claim in the Case:

| Creditor | Debtor | Proof of Claim No. | Amount Asserted |
|---|---|---|---|
| Delaney Keaten | Terra and Main Street | Terra Claim No. 5; Main Street Claim No. 6 | $7,207,295.40 |
| Kathleen Keaten | Terra and Main Street | Terra Claim No. 4; Main Street Claim No. 5 | $5,190,175.86 |

**6. Terra Other General Unsecured Claims and Convenience Claims**

Terra has several unsecured pre-petition creditors which comprise Classes 4.a and 5 under the Plan. Attached hereto as **Exhibit A** is a list of General Unsecured Claims asserted against Terra subject to the Debtors' further review and objection. This list includes the amount of the Claim as listed on Terra's Schedules or the amount asserted by the creditor in its proof of claim, if filed.

Terra is continuing to review its books and records and reserves all rights to revise its Schedules or object to proofs of claim prior to confirmation of the Plan or in accordance with the Disputed Claim procedures set forth in the Plan.

**7. Main Street Other General Unsecured Claims and Convenience Claims**

Main Street has several unsecured pre-petition creditors which comprise Class 4.b and 5 under the Plan. Attached hereto as **Exhibit A** is a list of General Unsecured Claims asserted against Main Street, subject to the Debtors' further review and objection. This list includes the amount of the Claim as listed on Main Street's Schedules or the amount asserted by the creditor in its proof of claim, if filed.

Main Street is continuing to review its books and records and reserves all rights to revise its Schedules or object to proofs of claim prior to confirmation of the Plan or in accordance with the Disputed Claim procedures set forth in the Plan.

## III. SIGNIFICANT EVENTS IN CHAPTER 11 CASE

The Debtors have complied with all requirements of the Bankruptcy Code and of the Office of the U.S. Trustee, including establishing a debtor-in-possession bank account, and the filing of monthly operating reports.

### A. Initial Relief

Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 15, 2021. In connection with the filing of their Chapter 11 Cases, the Debtors filed applications to employ professionals and certain Initial Relief Motions that requested the following types of relief:

- A Motion for Joint Administration (Docket No. 26). The Court granted the Joint Administration Motion on October 27, 2021 (Docket No. 44), directing that the Debtors' cases be jointly administered under Main Case No. 21-15245.

- An Application to Employ Brownstein Hyatt Farber Schreck, LLP ("**BHFS**") as bankruptcy counsel (Docket No. 9) and a Motion to Approve Retainer Paid to BHFS (Docket No. 32). The Court granted the BHFS Application and the Retainer Motion on November 22, 2021 (Docket Nos. 77 and 78).

- An Application to Employ Haynie & Company as Tax Accountant for Debtors in Possession (Docket No. 35). The Court granted the Haynie Application on November 18, 2021 (Docket No. 74), and Haynie & Co. has served as the Debtors' tax accountant through the pendency of these Chapter 11 Cases.

- An Expedited Motion of Debtors Authorizing Payment of Prepetition Employee Wages, Benefits and Related Items (Docket No. 27). On October 28, 2021, the Court entered an Order granting the Employee Wages Motion (Docket No. 47).

- An Expedited Motion of Debtor Littleton Main Street LLC for Authority to Use Cash Collateral (Docket No. 31). On November 17, 2021, the Court entered a Final Order granting the Cash Collateral Motion on a final basis (Docket No. 70).

Detailed information on these Initial Relief Motions and the grounds for the relief requested can be found in the Declaration of J. Marc Hendricks in Support of Motion Seeking Expedited Entry of Orders (Docket No. 29).

**B. Bar Date Motion**

On January 21, 2022, the Debtors filed a motion to establish bar dates for filing proofs of claim in the Chapter 11 Case. *See* Docket No. 104. On January 24, 2022, the Court entered an order establishing April 13, 2022 as the deadline for governmental units (as defined in § 101(27) of the Bankruptcy Code) to file proofs of claim and March 8, 2022 as the bar date with respect to all other proofs of claim. *See* Docket No. 105.

**C. Debtor-in-Possession Financing**

On April 15, 2022, the Debtors filed a motion for entry of an Order authorizing the Debtors to borrow up to $500,000.00 from J. Marc Hendricks and approving the Debtors' entry into a Post-Petition Loan Agreement (Docket No. 133) (the "**DIP Financing Motion**"). The DIP Financing Motion requests, among other things, that: (i) the funds will be used for general operating expenses and payment of professional fees and other administrative expenses, and (ii) the lender, J. Marc Hendricks, will hold administrative claim status pursuant to 11 U.S.C. § 364(b) for all amounts actually funded under the loan. The DIP Financing Motion is still pending before the Court.

**D. Modification of Automatic Stay and Appeal of Keaten Judgment**

On November 24, 2021, the Debtors filed a Stipulated Motion for Relief from Stay (Docket No. 81), requesting that the Court grant relief from the automatic stay imposed by Bankruptcy Code section 362(a) for the following two limited purposes: (1) a nullification of the automatic stay retroactively solely to permit entry of the State Court Judgment and filing and receipt of the Notice of Appeal, and (2) a modification of the automatic stay to permit Debtors to prosecute the Appeal in all respects, and for the Keatens to defend or otherwise respond to the Appeal in all respects. The Court

entered an Agreed Order Modifying Automatic Stay on December 21, 2021 (Docket No. 93) for these two limited purposes.

### E. Retention of Business Valuation and Appraisal Professionals

On April 11, 2022, Main Street filed an Application to Employ Newmark Valuation & Advisory, LLC as Appraiser ("**Newmark**") to do an appraisal of the Property and Newmark commenced their work on an appraisal of the Property. The value of the Property is a central issue raised by the Keatens in this case and Main Street anticipates it will need to establish the Property's value to demonstrate ability to reorganize and to confirm a plan of reorganization. The Court entered an Order granting the Newmark Application on May 5, 2022 (Docket No. 106).

On April 19, 2022, Terra filed an *Ex Parte* Application to Employ BerganKDV, Ltd. ("**BKDV**") to perform a business valuation of Terra and related services (Docket No. 135). The value of Terra's business is another central issue raised by Terra's largest unsecured creditors in this case, Kathleen Keaten and Delaney Keaten. The Court granted the BKDV Application on April 22, 2022 (Docket No. 137), and BKDV commenced their work performing a business valuation of Terra.

## IV.  DESCRIPTION OF PLAN

The following is a brief summary of certain provisions of the Plan; however, this summary is not comprehensive. The Plan, and not the Disclosure Statement, is the legally operative document that controls the relationship between the Debtors and its creditors and Interest holders. Therefore, the Plan should be read carefully and independently of this Disclosure Statement. Creditors and Interest holders are urged to consult with counsel and other professionals to resolve any questions concerning the Plan.

### A. Overview of the Plan

The Debtors filed their Plan with the Court on May 13, 2022. The Plan provides for the reorganization of the Debtors under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtors shall restructure their secured and unsecured debts and obligations. The Plan provides for the specification and treatment of all creditors and Interest holders of the Debtors. The Plan is a relatively simple chapter 11 plan of reorganization. The Plan is intended to preserve the Debtors' business as a going concern, retain the Debtors' employees and assets, and to restructure the Debtors' capital structure. The Plan permits the Debtors' unsecured claimants to elect to receive (i) a cash payment equal to 10% of such claimant's Allowed Claim on the effective date of the Plan or (ii) an Unsecured Claim Distribution equal to its Pro Rata share of 80% of the Debtors' Net Cash Flow generated over the five-year period commencing on the Effective Date of the Plan. Funding for all payments to be made under the Plan will come from capital from the Debtors' Post Petition Lender and/or the reorganized Debtors' continued business operations.

### B. Treatment of Unclassified Claims

#### 1. Administrative Claims

The holders of Allowed Administrative Claims of the type specified in Section 507(a)(2) of the Bankruptcy Code shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such

Allowed Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance or as otherwise agreed.

### 2.  U.S. Trustee Payments

The Debtors will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All outstanding payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

### C.  Classification and Treatment of Claims and Interests

The classification of Claims and Interests against the Debtors under the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Main Street Secured Claims | | |
| 1.a | Transamerica Secured Claim | Impaired | Entitled to Vote |
| 1.b | Arapahoe County Treasurer Claim | Impaired | Entitled to Vote |
| 2 | Terra Secured Claims | | |
| 2.a | Ally Secured Claim | Impaired | Entitled to Vote |
| 2.b | Garnet Secured Claim | Unimpaired | Deemed to Accept |
| 3 | Disputed Keatens Claims | Impaired | Entitled to Vote |
| 4.a | Terra Other General Unsecured Claims | Impaired | Entitled to Vote |
| 4.b | Main Street Other General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | Terra Equity | Impaired | Deemed to Reject |
| 7. | Main Street Equity | Impaired | Deemed to Reject |

**D. Treatment of Classified Claims**

**1. Class 1 – Main Street Secured Claims**

Class 1 consists of the secured Claims against Main Street held by Transamerica and the Arapahoe County Treasurer.

(a) The Class 1.a Claim consists of the secured Claim of Transamerica related to the Main Street mortgage on the Property. Class 1.a is impaired under the Plan. The Class 1.a Claim will be treated and paid as follows:

(i) On the Effective Date, Main Street shall deliver to the Class 1.a claimant an amended secured promissory note (A) in the current outstanding principal amount of $2,011,429.75 (or such other amount as the Court sets forth in the Confirmation Order), (B) with a final maturity on the fifth anniversary of the Effective Date, and (B) otherwise on the same terms as the Secured Promissory Note dated as of December 12, 2014 executed by Main Street to the order of Transamerica, including (without limitation) with respect to the terms on interest and amortization thereunder. The initial payment under the amended note shall be made in the first full month after the Effective Date of the Plan.

(ii) Transamerica shall retain its Lien on the Collateral securing its Claim to secure the principal and interest due and payable pursuant to the amended note described in the preceding paragraph, with such Lien attaching to the Collateral in the same priority as existed immediately prior to the Petition Date. Upon payment of the principal and interest under the amended note described in the preceding paragraph, Transamerica shall release its Liens.

(iii) On the Effective Date, the Class 1.a claimant shall receive a cash payment in an amount equal to (A) its reasonable attorneys' fees and costs incurred in connection with the Chapter 11 Case plus (B) a $25,000 extension fee.

(b) The Class 1.b Claim consists of an ad valorem tax claim held by the Arapahoe County Treasurer. Class 1.b is impaired under the Plan. The holder of the Class 1.b Claim shall receive a cash payment within sixty (60) days of the Effective Date in the amount of $13,311.81, plus any post-petition interest ordered by the Court. Upon receipt of payment, the Arapahoe County Treasurer shall release its Lien.

**2. Class 2 – Terra Secured Claims.**

Class 2 consists of the Secured Claims against Terra held by Ally and Garnet.

(a) The Class 2.a Claim consists of the Allowed Secured Claim of Ally regarding a secured loan on a 2019 Chevrolet Silverado 2500 Truck. Class 2.a is impaired under the Plan. The Class 2.a Secured Claim will be treated and paid as follows:

       (i)     The principal amount of the Class 2.a Claim will be allowed (A) in the current outstanding principal amount of $18,394.21; or (B) an amount agreed upon by Terra and Ally on or before the Confirmation Date.

       (ii)    The Class 2.a Claim will bear interest at the rate of 6.89%  per annum commencing on the Effective Date of the Plan.

       (iii)   The Class 2.a Claim shall mature on December 13, 2025 and shall amortize in equal monthly installments commencing in the first full month after the Effective Date of the Plan through the maturity date.

       (iv)   Ally shall retain its Liens in the Collateral securing its Claim, with such Liens attaching to the Collateral in the same relative priority as existed immediately prior to the Petition Date. Upon completion of the final payment described in the preceding subparagraph, Ally shall release its Lien.

       (v)    Terra shall be entitled to pre-pay the Class 2.a Claim without premium or penalty.

(b) The Class 2.b Claim consists of the Secured Claim of Garnet regarding an asserted lien on the property management fee of HC Brighton Senior II, L.P. Class 2.b is unimpaired under the Plan. Terra disputes Garnet's security interest and Garnet did not file a proof of claim in the Chapter 11 Case. The Debtors do not believe any sums are due and owing in respect of this claim. Pursuant to Bankruptcy Code section 1124(1), the holder of the Class 2.b Claim shall retain unaltered its legal, equitable and contractual rights, if any, arising from the Class 2.b Claim.

**3. Class 3 – Keatens Claims.**

Class 3 –Keatens Claims. Class 3 consists of Disputed Unsecured Claims held by the Keatens in connection with the State Court Judgment. Class 3 is impaired under the Plan. The holders of the Class 3 Claims may elect either treatment (a) or (b) below.

       (a)    In full and final satisfaction, compromise, settlement, release, and discharge of its Claims, the Class 3 claimants shall receive a cash payment on the Effective Date in an amount equal to 10% of the Class 3 Claims. If the holders of the Class 3 Claims elect treatment pursuant to this subparagraph, the Class 3 Claims shall be deemed Allowed and not Disputed.

       (b)    In the event that Class 3 elects treatment pursuant to this subparagraph, the holders of the Class 3 Claim will receive an Unsecured Claim Distribution equal to its Pro Rata share of 80% of the Debtors' Net Cash Flow generated over the five-year period commencing on the Effective Date of the Plan. Unless and until allowed by Final Order, the Class 3 Claims shall be treated as Disputed Claims.

       (c)    For the avoidance of doubt, a Class 3 claimant shall not receive a greater amount under the Plan than the amount of its Allowed Claim.

    4.   **Class 4.a – Terra Other General Unsecured Claims.**

Class 4.a consists of General Unsecured Claims against Terra in an amount greater than $500 that does not elect to be treated as a Convenience Claim. Class 4.a is impaired under the Plan. Any holder of a Class 4.a Claim may elect either treatment (a) or (b) below:

        (a)    In full and final satisfaction, compromise, settlement, release, and discharge of its Claims, the Class 4.a claimant  shall receive a cash payment on the Effective Date in an amount equal to 10% of the holder's Class 4.a Claim. If the holder of the Class 4.a Claim elects treatment pursuant to this subparagraph, the applicable Claim shall be deemed Allowed and not Disputed.

        (b)    In the event that the holder of a Class 4.a Claim elects treatment pursuant to this subparagraph, such holder will receive an Unsecured Claim Distribution equal to its Pro Rata share of 80% of the Debtors' Net Cash Flow generated over the five-year period commencing on the Effective Date of the Plan.

        (c)    For the avoidance of doubt, a Class 4.a claimant shall not receive a greater amount under the Plan than the amount of its Allowed Claim.

    5.   **Class 4.b – Main Street Other General Unsecured Claims.**

Class 4.b consists of General Unsecured Claims against Main Street in an amount greater than $500 that does not elect to be treated as a Convenience Claim. Class 4.b is impaired under the Plan. Any holder of  a Class 4.b Claim may elect either treatment (a) or (b) below:

        (a)    In full and final satisfaction, compromise, settlement, release, and discharge of its Claims, the Class 4.b claimant shall receive a cash payment on the Effective Date in an amount equal to 10% of the holder's Class 4.b Claim.  If the holder of the Class 4.b Claim elects treatment pursuant to this subparagraph, the applicable Claim shall be deemed Allowed and not Disputed.

        (b)    In the event that the holder of a Class 4.b Claim elects treatment pursuant to this subparagraph, such holder will receive an Unsecured Claim Distribution equal to its Pro Rata share of 80% of the Debtors' Net Cash Flow generated over the five-year period commencing on the Effective Date of the Plan.

        (c)    For the avoidance of doubt, a Class 4.b claimant shall not receive a greater amount under the Plan than the amount of its Allowed Claim.

    6.  **Class 5 – Convenience Claims.**

Class 5 consists of Allowed Unsecured Convenience Claims and Class 4.a and Class 4.b claimants that choose to make a Convenience Class Election. Class 5 is impaired under the Plan. In full and final satisfaction, compromise, settlement, release, and discharge of its Claim, a Class 5 claimant shall receive a cash payment on the Effective Date in an amount equal to 75% of the Class 5 claimant's claim.

### 7. Class 6 – Terra Equity.

Class 6 consists of the pre-Petition Date membership or equity interests of Terra, a Colorado limited liability company. Class 6 is impaired under the Plan and all outstanding pre-Petition Date interests of Class 6 claimants shall be cancelled on the Effective Date of the Plan. Class 6 shall neither receive nor retain an interest in Terra under the Plan on account of such Interest.

### 8. Class 7 – Main Street Equity.

Class 7 consists of the pre-Petition Date membership or equity interests of Main Street, a Colorado limited liability company. Class 7 is impaired under the Plan and all outstanding pre-Petition Date interests of Class 7 claimants shall be cancelled on the Effective Date of the Plan. Class 7 shall neither receive nor retain an interest in Main Street under the Plan on account of such Interest.

## E. Means of Execution

### 1. Effectuating the Plan

On the Effective Date of the Plan, the Debtors shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including but not limited to execution of documents.

### 2. New Capital.

The Post-Petition Lender shall invest up to $1,500,000.00 in the reorganized Debtors, which shall be used to make payments required under the Plan and for operations. The claims of the Post-Petition Lender for new capital actually funded in connection with the Plan may be satisfied through issuance of equity in the reorganized Debtors upon confirmation of the Plan.

### 3. Unsecured Claim Distribution

If any Class 3, Class 4.a or Class 4.b claimant elects to receive an Unsecured Claim Distribution, commencing on the first full month following the Confirmation Date, the Debtors shall at the conclusion of each month, set aside in a segregated account, an amount equal to 80% of the preceding month's Net Cash Flow. Holders of General Unsecured Claims that elect to receive the Unsecured Claim Distribution shall receive distributions on a quarterly basis. The first such quarterly distribution shall be made on the first day of the first calendar quarter beginning after the Effective Date, and the Debtors shall continue making such distributions on the first day of each calendar quarter (i.e., January 1st, April 1st, July 1st, October 1st) thereafter.

## F. Feasibility; Financial Projections

Section 1129(a)(11) of the Bankruptcy Code requires that a debtor or plan proponent demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless the plan calls for liquidation. The Debtors believe that the Plan, as proposed, is feasible.

To the extent that a Class 3, Class 4.a or Class 4.b claimant elects to receive cash on the Effective Date of the Plan, those payments will be funded by amounts received from the Post-Petition Lender. The Debtors anticipate generating sufficient ongoing income from business investments to meet all obligations under the Plan.  To the extent that a Class 3, Class 4.a or Class 4.b claimant elects to receive an Unsecured Claim Distribution, such claimant will receive payment from Net Cash Flow. The Debtors will supplement this Disclosure Statement with financial projections of Net Cash Flow prepared by the Debtors' management for the five-year period in which payments are projected to be made under the Plan. Projections are inherently uncertain, but the forthcoming financial projections are Debtors' best effort to project the results of operations for the reorganized Debtors based on all facts and circumstances presently known to the Debtors.

## V. <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

Debtors are party to certain unexpired leases and executory contracts as set forth on <u>Exhibit A</u> to the Plan.

**A.     Assumption or Rejection of Executory Contracts and Unexpired Leases**.  Any executory contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that (i) the applicable Debtor has not assumed and/or assigned or rejected with the approval of the Bankruptcy Court, (ii) is not identified as a contract or unexpired lease to be assumed in <u>Exhibit A</u> to the Plan, and (iii) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the applicable Debtor, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.     Assumed Contracts; Cure of Defaults.**

Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in cash on the Effective Date or on such other terms as the parties to each such assumed executory contract and unexpired lease may otherwise agree. <u>Exhibit A</u> to the Plan sets forth the proposed cure payments as of the projected Effective Date. The Debtors reserve the right to remove executory contracts or unexpired leases from such list or to modify the cure amounts executed in connection therewith at any time prior to the Confirmation Hearing.

Any objection to (a) the amount of any cure payments for the Assumed Contracts, (b) the ability of the reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, shall be filed and served on the Debtors on or before the deadline established by the Bankruptcy Court for filing objections to the Plan.  In the event an objection is filed, the Debtors shall attempt to resolve such objection prior to the Confirmation Hearing.  To the extent the parties are unable to consensually resolve such objection prior to the Confirmation Hearing, such objection and any cure amounts to be paid will be determined at the Confirmation Hearing or as otherwise agreed to by the parties or ordered by the Bankruptcy Court.

In the event that a dispute remains unresolved as of the Effective Date regarding (a) the amount of any cure payments, (b) the ability of the reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. However, any such "deemed" assumption shall not affect any counterparty's rights and/or remedies under section 365 of the Bankruptcy Code or otherwise, which shall be preserved pending final resolution notwithstanding the "deemed" assumption.

## VI.    MISCELLANEOUS PROVISIONS

### A.  Post-Effective Date Fees and Expenses

From and after the Effective Date, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, the reasonable fees and expenses of professional persons incurred after the Effective Date by the Debtors will be paid by the Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### B.  U.S. Trustee Payments

The Debtors will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All outstanding payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

### C.  Claims Objections and Settlements

After the Effective Date, Claims objections may be made, and Claims objections made previous thereto will be pursued, only by the Debtors. The deadline for the Debtors to file Claims objections will be 180 days after the Effective Date, subject to extension by motion to the Bankruptcy Court. After the Effective Date, the Debtors will, without further order of the Bankruptcy Court, have the right to retain and compensate counsel or other professionals to assist with Claims objections or any other duties of the Debtors under the Plan. After the Effective Date, the Debtors may settle any Disputed Claims without notice and a hearing and without an order of the Bankruptcy Court.

### D.  Disputed Claims

Distributions to any class of creditor will only be made on account of Allowed Claims. In the event that distributions are made at a time that a Claim objection is pending before the Court, a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, or a Claim is otherwise Disputed and not yet Allowed, the holder of the Disputed Claim shall not receive a distribution but instead the portion of the distribution that would be made on account of the Disputed

Claim had it been an Allowed Claim in the amount asserted will be held in an interest bearing bank account until the Claim is Allowed or disallowed. If Allowed, the Claim will be paid in the Allowed amount from the withheld payment. If disallowed, (i) if the claimant elected to receive an Unsecured Claim Distribution, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired Allowed claimants that elected to receive Unsecured Claim Distributions, or if all holders of Allowed Claims that made the election have been paid in full, paid to Debtors or (ii) if the claimant did not elect to receive an Unsecured Claim Distribution, the withheld distribution will be paid to the Debtors.

### E. Retention of Jurisdiction

The Plan contains a standard retention of jurisdiction provision. The Bankruptcy Court will retain jurisdiction to enforce the terms of the Plan.

## VII.  RISK FACTORS

As with any plan or other financial transaction, there are certain risk factors which must be considered.  It should be noted that all risk factors cannot be anticipated, that some events will develop in ways that were not foreseen and that many or all of the assumptions that have been used in connection with this Disclosure Statement and the Plan will not be realized exactly as assumed.  Some or all of such variations may be material.  While every effort has been made to be reasonable in this regard, there can be no assurance that subsequent events will bear out the analysis set forth herein. Not all possible risks can be, or are discussed in this Disclosure Statement. Under the Plan, some of the principal risks that holders of Claims and Interests should be aware of, in the Debtors' view, are as follows:

### A. Certain Bankruptcy Law Considerations

1. Parties-in-Interest May Object to the Debtors' Classification of Claims and Equity Interests.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtors believe that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created classes of Claims that are substantially similar to the other Claims in each such class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2. The Debtors May Object to the Amount of a Claim.

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection. Thus, any holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

3.   Contingencies Will Not Affect Votes of Impaired Classes to Accept or Reject the Plan.

The distributions available to holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect distributions available to holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the impaired classes to accept or reject the Plan or require any sort of revote by the impaired classes.

**B.  Risk Factors That May Affect Recoveries Under The Plan**

1.   Failure to Achieve Projected Financial Results.

If any Class 3, Class 4.a or Class 4.b claimant elects to receive an Unsecured Claim Distribution, commencing on the first full month following the Confirmation Date, the Debtors shall at the conclusion of each month, set aside in a segregated account, an amount equal to 80% of the preceding month's Net Cash Flow. The Debtors will supplement this Disclosure Statement with financial projections that represent the Debtors' best estimate of Net Cash Flow based on currently known facts and assumptions about the Debtors' future operations as well as the economy in general and the industry segments in which the Debtors operate in particular. The actual results may differ significantly from the forthcoming financial projections. If the Debtors do not achieve their projected financial results, the Debtors may not be able to make the projected payments to creditors contemplated by the Plan.

2.   Amount of Priority Claims.

United States Bankruptcy Code Section 1129(a)(9) requires that claims entitled to statutory priority be paid in cash or deferred cash payments. If unanticipated priority claims arise, funds available to pay unsecured creditors could be reduced dollar for dollar.

3.   Amount of General Unsecured Claims.

To the extent that General Unsecured Claims in Class 3, Class 4.a or Class 4.b Claims exceed forecast amounts, any distributions thereon would be diluted, as General Unsecured Claims electing to receive an Unsecured Claim Distribution are receiving distributions Pro Rata.

**VIII.  LIQUIDATION ANALYSIS**

The principal alternative to the Debtors' reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtors' assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the assets and be the principal party involved in reviewing claims. Any remaining non-exempt assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

To confirm the Plan, the Court must determine (with certain exceptions) that the Plan provides each member of each Impaired class of Allowed Claims a recovery at least equal to the distribution

that such member would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The trustee appointed in a chapter 7 case would make all of his or her own decisions with respect to the liquidation of the Estate, the hiring of professionals, the pursuit of any claims or litigation, and the payment or objection to Claims.

Based on the information available to the Debtors, the Debtors believe that creditors will receive a significantly higher recovery under the Plan than they would in a chapter 7 liquidation. The Debtors are in the process of obtaining an appraisal of Main Street's Property and a valuation of Terra's business. Once complete, the Debtors will promptly supplement this Disclosure Statement with a liquidation analysis prepared by the Debtors' management showing estimated distributions to creditors in the event of a chapter 7 liquidation.

In particular, with respect to Main Street, it is unlikely that Main Street's General Unsecured Creditors would receive any significant value in a chapter 7 liquidation because Main Street's main asset is encumbered by the Transamerica mortgage. With respect to Terra, Terra has no assets of value other than property management contracts. Terra's property management contracts contain anti-assignment provisions, and in any event, tend to run for short terms (a year or less), to be renewed or not in the sole discretion of the owner of the project, and their lenders and LIHTC credit investors. Even to the extent that the Transamerica mortgage is oversecured, after payment of costs of sale, secured claims, priority claims and administrative expense claims, the Debtors anticipate that unsecured creditors are unlikely to receive more than a 10% cash payment on account of their claims. Further, in a Chapter 7 case, the Post-Petition Lender will not make a contribution to pay creditor claims on the Effective Date.

## IX.  RECOMMENDATION, SOLICITATION AND ACCEPTANCE OF PLAN

The Debtors hereby solicit acceptance of the Plan and urge its creditors and Interest holders to vote to accept the Plan. As set forth above, the Debtors believe that the Plan represents the best alternative for providing the maximum value for creditors. The Debtors strongly believe that confirmation of the Plan is in the best interest of creditors and recommends that all creditors entitled to vote on the Plan vote to accept the Plan.

[*The remainder of this page is intentionally left blank.*]

DATED: May 13, 2022

**TERRA MANAGEMENT GROUP, LLC**

*/s/ J. Marc Hendricks*
J. Marc Hendricks, President and Manager

**LITTLETON MAIN STREET LLC**

*/s/ J. Marc Hendricks*
J. Marc Hendricks, President of MJT Properties, Inc.,
in its capacity as Manager

APPROVED AS TO FORM:

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

By: */s/ Amalia Sax-Bolder*
    Michael J. Pankow, Esq.
    Amalia Sax-Bolder, Esq.
    410 17th Street, Suite 2200
    Denver, CO 80202
    Phone: (303) 223-1100
    Fax: (303) 223-1111
    Email: mpankow@bhfs.com
        asax-bolder@bhfs.com

*Attorneys for the Debtors*

# EXHIBIT A

## (Asserted General Unsecured Claims)[1]

| Creditor | Debtor | Claim No. / Schedule | Claim Amount |
|---|---|---|---|
| *Claims Against Littleton Main Street LLC* | | | |
| Bear Steam Cleaning, Inc | Main Street | Main Street Claim No. 2 | $55.00 |
| Broomhall Brothers, Inc. | Main Street | Main Street Claim No. 1 | $7,730.48 |
| CenturyLink | Main Street | Main Street Schedule E/F | $150.87 |
| Colorado Pest Management, Inc. | Main Street | Main Street Schedule E/F | $160.00 |
| Comcast Business | Main Street | Main Street Schedule E/F | $300.33 |
| Denver Water | Main Street | Main Street Schedule E/F | $316.69 |
| FedEx Bankruptcy Department | Main Street | Main Street Schedule E/F | $48.69 |
| First Advantage – Employee Screening | Main Street | Main Street Schedule E/F | $18.60 |
| HD Supply Facilities Maintenance | Main Street | Main Street Claim No. 7 | $147.84 |
| Home Depot Pro | Main Street | Main Street Schedule E/F | $1,295.35 |

---

[1] The Debtors are still in the process of reviewing their books and records and reserve all rights with respect to the expected claim amounts listed herein. Debtors reserve all rights to object to proofs of claim. Certain of the claims listed herein will be paid in the Allowed amount in connection with the assumption of an executory contract under section 365 of the Bankruptcy Code. For the avoidance of doubt, the Debtors also reserve all rights with respect to the continued evaluation and refinement of the Debtors' Schedules filed in this Case and the Debtors' rights to revise their Schedules.

| Creditor | Debtor | Claim No. / Schedule | Claim Amount |
|---|---|---|---|
| Meridian Fire and Security, LLC | Main Street | Main Street Schedule E/F | $7,834.88 |
| Mountain Alarm | Main Street | Main Street Schedule E/F | $38.78 |
| North Star, Inc. | Main Street | Main Street Schedule E/F | $36.00 |
| PEAK Elevator, LLC | Main Street | Main Street Schedule E/F | $850.55 |
| Qwest Corporation dba CenturyLink QC | Main Street | Main Street Claim No. 4 | $54.08 |
| Rapid Restoration & Construction | Main Street | Main Street Schedule E/F | $14,445.00 |
| RealPage, Inc. | Main Street | Main Street Schedule E/F | $89.61 |
| Republic Services (#535) | Main Street | Main Street Schedule E/F | $558.44 |
| Shawn Kadlick | Main Street | Main Street Schedule E/F | $823.13 |
| State of Colorado Housing | Main Street | Main Street Schedule E/F | $1,762.00 |
| Xcel Energy | Main Street | Main Street Claim No. 3 | $2,150.91 |
| *Claims Against Terra Management Group, LLC* | | | |
| Comcast Business | Terra | Terra Schedule E/F | $589.20 |
| FirstBank | Terra | Terra Claim No. 8 | $4,859.76 |

| Creditor | Debtor | Claim No. / Schedule | Claim Amount |
|---|---|---|---|
| North Star, Inc. | Terra | Terra Schedule E/F | $132.28 |
| Pacific Office Automation | Terra | Terra Claim No. 7 | $11,480.50 |
| Pacific Office Automation, Inc. | Terra | Terra Claim No. 1 | $1,165.18 |
| Pitney Bowes Inc. | Terra | Terra Claim No. 6 | $955.07 |
| Premiere Global Services | Terra | Terra Schedule E/F | $58.05 |
| Same Day Office Supply | Terra | Terra Schedule E/F | $781.42 |
| U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance | Terra | Terra Claim No. 3 | $41,790.97 |
| *Claims Against Both Debtors* | | | |
| Spencer Fane LLP | Terra and Main Street | Terra Schedule E/F; Main Street Schedule E/F | $377,051.69 |
| | | **TOTAL** | **$477,731.35** |